Johnson, J.
This was a proceeding brought in the common pleas of Columbiana county to enjoin the issuing of bonds by the city of Wellsville for the purpose of constructing a municipal electric-lighting plant. The council of the city on August 30, 1912, passed a resolution declaring the necessity for the issuance of bonds for the purpose stated. The resolution provided that the question should be submitted to the qualified electors of the city on the day of the regular election to be held on the 5th of November, 1912. The action referred to was taken under the provisions of Sections 3939 to 3947, inclusive, of the General Code. The proposition was voted on at a special election held on the day named. The special election was conducted independently of the general election. Separate ballots and ballot boxes were provided, but the special election was under the control and supervision of the officers duly appointed to conduct the general election held on that day. The certificate of the mayor and city auditor, filed as required by law, stated that the votes cast in favor of the proposition were more than two-thirds of the total number of votes cast on the proposition. The petition sets forth a number of different grounds upon which the relief was prayed for, among them being that *30 “two-thirds of the voters voting at said pretended election held November 5, 1912, did not vote in favor of issuing said bonds.” -There was a general denial of these allegations in the answer.
The court of common pleas enjoined the issue and on appeal the court of appeals entered the same decree. It is stated in the entry of the decree of the latter court that “two-thirds of the voters of said city voting upon said proposition did not vote in favor of issuing said bonds, and the defendants are therefore without lawful authority to issue and sell said bonds.” The determination of the issues made by the pleadings involved the construction .of the statute under which the election was held.
It is conceded that there were a number of blank ballots and a number of unintelligible ballots cast at the election and that if these should be counted against the proposition it would be lost. The court below was of the opinion that before the proposition could be adopted it was necessary that two-thirds of all of the votes cast at the election should be in its favor.
Section 3947, General Code, is as follows: “If two-thirds of the voters voting at such election upon the question of issuing the bonds vote in favor thereof, the bonds shall be issued. Those who vote in. favor of the proposition shall have written or printed on their ballots, ‘For the issue of bonds’; and those who vote against it shall have written or printed on their ballots, ‘Against the issue of bonds.’ ”
The cases of Enyart et al. v. The Trustees of Hanover Township, 25 Ohio St., 618, and The *31 State, ex rel., v. Foraker, Governor, 46 Ohio St., 677, are cited by the defendant in error in support, of the judgment below.
In the former case it was held that “Where an act of the legislature authorized the trustees of a township to levy a special tax, with a proviso 'that said trustees shall not cause said levy to be made until a majority of the electors of said township, at some regular election, shall vote in favor of said levy/ it required a majority of all the votes cast at such regular election, and not simply a majority of those voting for or against the levy.”
The court say: “In this case the entire number of votes cast for president and vice-president furnished the basis by which it is to be determined whether or not the levy was authorized.” The statute itself fixed the proportion required — a majority of electors at some regular election.
In The State, ex rel., v. Foraker, Governor, supra, an amendment to the constitution was submitted under the provisions of Section 1 of Article XYI of that instrument which provided for the publication of the proposed amendment prior to the next election for senators and representatives, and “if a majority of the electors, voting at such election, shall adopt such amendments, the same shall become a part of the constitution.”
The court held that a majority of all the votes cast at the “election for senators and representatives” was required for the adoption of such an amendment. In the opinion of the court it is pointed out that the constitution makes a different requirement as to an amendment submitted by a conven *32 tion called for that purpose in pursuance of the constitution from that made in Section 1 of Article XVI. It is provided in Section 3, Article XVI, that no amendment submitted by a convention called for that purpose shall take effect until submitted to the electors of the state and adopted by a majority of those “voting thereon.” But as to an amendment submitted by the legislature Section 1, Article XVI, as then in force, provided that the proposed amendment should be published prior to an election for senators and representatives and if a majority of electors “voting at such election” shall adopt such amendment, the same shall be a part of the constitution.
The court say: “If then it was intended that a majority of those voting on an amendment, submitted by the legislature, should be sufficient to adopt it, the question arises, why language equally clear and explicit was not adopted to express such intention in the one case as well as in the other; or why, instead of limiting the provision contained in section 3 to amendments ‘agreed upon by any convention,’ it was not extended so as to include an amendment submitted by any legislature. It would have been natural, and it is probable, that if the framers had had the same intention in framing section 1 as in framing section 3, as to how the majority for the adoption of an amendment should be ascertained, they would have provided in that section as in section 3, that it should be a majority ‘of those voting thereon’ instead of a majority ‘of the electors voting at such election.’ Such a plain difference of language indicates a plain difference *33 of intention.” The difference of requirement and intention indicated by the court in that case is plainly disclosed in the language used by the legislature in Section 3947 above quoted. It will be noted that the provision is, “If two-thirds of the voters voting at such election upon the question of issuing the bonds vote in favor thereof,” etc.
Section 5070, General Code, provides rules which the elector shall observe in marking his ballot. Subdivision 7 of that section provides: “If the elector marks more names than there are persons to be elected to an office, or if, for any reason, it is impossible to determine the voter’s choice for an office to be filled, his ballot shall not be counted for such office.”
By analogy, if it is impossible to determine the answer of an elector to a question submitted at the election, his ballot should not be counted upon that question. A ballot is merely the instrument by which a voter expresses his choice between candidates or on a question, and where the voter expresses no choice he has not voted for either candidate nor on the question. If upon any proposition the law requires that there shall be a majority of the votes cast at the election in order that the proposition should carry, it would be necessary to reckon with his vote. But if it is necessary to have - a majority of those voting at such an election upon the question, his vote would not be reckoned with, for he did not vote upon the question.
In order to prevent the casting of more than one ballot by any elector on any pretext the legislature *34 provided in Section 5075, General Code, that when a person has received an official ballot from an election officer, and has delivered it to the officer in charge of the ballot box at the time, and such ballot has been deposited in the ballot box, such person shall be deemed to have voted. The elector who has thus caused a ballot to be deposited has exhausted his privilege. A number of cases have been gathered and cited in the briefs. An examination of them discloses that courts have adopted the interpretation required by the language of the respective statutes involved. We think the court' of appeals erred in its judgment for the reasons stated. There were other grounds stated in the petition for injunction which were met by the answer. The contentions of the parties as supported by the record have been carefully examined by us and upon these we think that the issue must be resolved in favor of the defendants.
The judgment of the court of appeals will be reversed and the petition of the plaintiff dismissed.

Judgment reversed.

Nichols, C. J., Donahue, Wanamaker and Wilkin, JJ., concur.